1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PAULA CARRIE ROGERS,                        No.  2:24-cv-00475-TLN-CKD (PS)

12               Plaintiff,

13        v.                                     ORDER AND FINDINGS AND
                                                 RECOMMENDATIONS
14   COUNTY OF SACRAMENTO, et al.,

15               Defendants.

16

17   _____

18        Plaintiff Paula Carrie Rogers paid the filing fee and filed this civil action without counsel.

19   This matter is before the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Local Rule

20   302(c)(21).

21        Presently before the Court is defendants' City of Elk Grove, Bobby Davis, Tina Durham,

22   and Tisha Smith's (the "City defendants") motion to dismiss plaintiff Paula Carrie Rogers's

23   complaint (ECF No. 8), and defendant County of Sacramento's (the "County defendant") motion

24   to dismiss plaintiff's complaint (ECF No. 10).  Also before the Court are plaintiff's motions for

25   judgment on the pleadings (ECF Nos. 23, 30, 31), and plaintiff's three requests for judicial notice

26   (ECF Nos. 32, 39, 42).  The Court held a hearing on December 11, 2024, where plaintiff appeared

27   pro se, attorneys Jonathan Hobbs and Brianne O'Sullivan appeared for the City defendants, and

28   attorney Denny Yu appeared for the County defendant.

                                                 1

In the complaint, plaintiff alleges defendants discriminated against her in violation of federal and state laws during a traffic stop because of her race.  Pursuant to Rule 12(b)(6) and Rule 8 of the Federal Rules of Civil Procedure, defendants move the Court for an order dismissing the complaint.  For the reasons set forth below, the County defendant's motion to dismiss should be granted and the City defendants' motion to dismiss should be granted in part and denied in part.  Because defendants had pending motions to dismiss at the time plaintiff filed her motions for judgment on the pleadings, and because the motions for judgment on the pleadings are untimely, the motions for judgment on the pleadings should also be denied.

**I.    Request for Judicial Notice**

Plaintiff filed three requests for judicial notice:  the first on October 8, 2024, the second on November 4, 2024, and the third on November 26, 2024.  (ECF Nos. 32, 39, 42.)  Plaintiff requests that the court "take judicial notice of the rule of law set forth in the Memorandum of Points and authorities" and apply it to any ruling by the court on defendants' pending motions. (ECF Nos. 32 at 2, 39 at 2, 42 at 2.)  On a motion to dismiss, a court may consider documents attached to the complaint, documents incorporated by reference in a complaint, or documents subject to judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Federal Rule of Evidence 201 permits courts to take judicial notice of factual material "(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Additionally, courts may take notice of "matters of public record."  *Reyn's Pasta Bella, LLC. v. Visa USA, Inc.*, 442 F.3d 741,746 n.6 (9th Cir. 2006).

To the extent plaintiff is requesting judicial notice of the case law and relevant statutes cited in the requests, the Court denies the requests as moot because the Court does not need to judicially notice case law or relevant statues or regulations to consider them.  *De Anda v. Ford Motor Co.*, 668 F. Supp. 3d 976, 983 (C.D. Cal. 2023); *Anselmo v. County of Shasta, Cal.*, 873 F. Supp. 2d 1247, 1254 n.4 (E.D. Cal. 2012).

Plaintiff also appears to be attempting to use these requests to further respond to defendants' motions to dismiss and to support her motion for judgment on the pleadings.  Plaintiff

already opposed each of defendants' motions to dismiss on March 20, 2024 (ECF Nos. 11, 12),

and the matters were deemed submitted on April 24, 2024 (ECF No. 19).  Plaintiff also had the

ability to file a reply to defendants' oppositions to her motions for judgment on the pleadings but

chose not to do so.  *See* Local Rule 230(d) ("No later than ten (10) days after the opposition was

filed, the moving party may serve and file a reply to any opposition filed by a responding party).

However, the court has reviewed the motions and does not see any new argument contained

within that would change the court's ruling on the pending motions.  Plaintiff's requests for

judicial notice (ECF Nos. 32, 39, 42) are denied.

## II.     Procedural Background

Plaintiff filed a complaint on February 15, 2024, and paid the filing fee.  (ECF No. 1.)

The complaint names five defendants: the County of Sacramento; the City of Elk Grove[1]; Bobby

Davis, Chief of Police; Detective Tina Durham; and Officer Tisha Smith.  On March 18, 2024,

the City defendants and the County defendant each moved to dismiss plaintiff's complaint for

failure to state a claim.  (ECF Nos. 8, 10.)  Both motions are fully briefed.  (ECF Nos. 11, 12, 15,

16.)  The hearing date originally set for each motion was vacated on the court's own motion.

(ECF No. 19.)

Plaintiff also filed a motion for judgment on the pleadings on September 24, 2024.  (ECF

No. 23.)  This motion was improperly noticed before Chief District Judge Troy L. Nunley, and

the hearing set before him was accordingly vacated.  (ECF No. 24.)  Plaintiff filed two additional

motions for judgment on the pleadings (ECF Nos. 30, 31), both also improperly noticed.  All

---

[1]  Plaintiff names the City of Elk Grove on the cover of her complaint as a defendant, however the body of the complaint discusses allegations against the Elk Grove Police Department.  (*See, e.g.*, ECF No. 1 at 5.)  The City defendants do not take issue with this and address the claims as if they were brought against the City of Sacramento.  (*See* ECF No. 8.)  Because the police department is considered an entity of the city, the City of Elk Grove is an appropriate defendant in this case. *See Gunn v. Stanton Correctional Facility*, 2021 WL 1402141, at *2 (E.D. Cal. Apr. 4, 2021); *Cantu v. Kings County*, 2021 WL 411111, at * 1 (E.D. Cal. Feb. 5. 2021) (recognizing split within district courts regarding whether naming a sheriff's department is redundant or duplicative of the municipal entity; but finding that weight of authority finds that claims against a municipality and its respective police departments are treated as claims against the municipality and not subject to suit under 1983); *see also Kamath v. United States Dep't of Homeland Security*, 2024 WL 1077328, at *2 (N.D. Cal. Mar. 12, 2024) (agreeing to substituting the city and county in place of the police department as a defendant where plaintiff did not object).

1    defendants have opposed the motions for judgment on the pleadings.[2]  (ECF Nos. 28, 41.)

2    Plaintiff did not file any reply.

3          On the court's own motion, defendants' motions to dismiss and plaintiff's motions for

4    judgment on the pleadings were set for an in person hearing before the undersigned on December

5    11, 2024.  (ECF No. 40.)

6    **III.    Legal Standards**

7              **A.   Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)**

8          Dismissal under Rule 12(b)(6) may be warranted for "the lack of a cognizable legal theory

9    or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica*

10   *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  In evaluating whether a complaint states a claim

11   on which relief may be granted, the court accepts as true the allegations in the complaint and

12   construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*,

13   467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

14         "[R]ecitals of the elements of a cause of action, supported by mere conclusory statements,

15   do not suffice" to state a valid claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A

16   complaint must do more than allege mere "labels and conclusions" or "a formulaic recitation of

17   the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In

18   order to state a valid claim for relief, a plaintiff must allege "enough facts to state a claim to relief

19   that is plausible on its face."  *Id.* at 570.  A claim that is plausible on its face has sufficient factual

20   content to allow a reasonable inference that the defendant is liable for the misconduct alleged.

21   *Iqbal*, 556 U.S. at 678.  This plausibility standard "asks for more than a sheer possibility that a

22   defendant has acted unlawfully."  *Id.*

23         The court must construe a pro se pleading liberally to determine if it states a claim and,

24   prior to dismissal, tell a plaintiff of deficiencies in her complaint and give plaintiff an opportunity

25   _____

26   [2]  The County defendant filed its opposition to plaintiff's motions for judgment on the pleadings
     on November 26, 2024.  (ECF No. 41.)  This is more than fourteen days after plaintiff's motions
27   were filed on September 9, 2024, and October 8, 2024.  *See* Local Rule 230(c) ("Opposition, if
     any, to the granting of the motion shall be in writing and shall be filed and served no later than
28   fourteen (14) days after the motion was filed.").  However, the Court will consider the County
     defendant's opposition for the sake of judicial economy.

                                                    4

1  to cure them if it appears at all possible that the plaintiff can correct the defect.  *See Lopez v.*
2  *Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); *accord Balistreri*, 901 F.2d at 699
3  (stating that "pro se pleadings are liberally construed, particularly where civil rights claims are
4  involved"); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (stating that courts
5  continue to construe pro se filings liberally even when evaluating them under the standard
6  announced in *Iqbal*).  Nevertheless, courts are not required to accept as true allegations that are
7  merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  *Sprewell v.*
8  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

9  **B.  Motion for Judgment on the Pleadings**

10  Under Federal Rule of Civil Procedure 12(c), "a party may move for judgment on the
11  pleadings" after the pleadings are closed "but early enough not to delay trial."  A motion for
12  judgment on the pleadings pursuant to Rule 12(c) challenges the legal sufficiency of the opposing
13  party's pleadings.  *See, e.g.*, *Westlands Water Dist. v. Bureau of Reclamation*, 805 F.Supp. 1503,
14  1506 (E.D. Cal. 1992).

15  A motion for judgment on the pleadings is proper if "the moving party clearly establishes
16  on the face of the pleadings that no material issue of fact remains to be resolved and that it is
17  entitled to judgment as a matter of law."  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
18  896 F.2d 1542, 1550 (9th Cir. 1989).  Judgment on the pleadings is also proper when there is
19  either a "lack of a cognizable legal theory" or the "absence of sufficient facts alleged under a
20  cognizable legal theory."  *Balistreri*, 901 F.2d at 699.  In reviewing a Rule 12(c) motion, "all
21  factual allegations in the complaint [must be accepted] as true and construe[d] . . . in the light
22  most favorable to the non-moving party."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).
23  "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute,
24  and the moving party is entitled to judgment as a matter of law."  *Id.*

25  **C.  Leave to Amend**

26  If the court finds that a complaint or claim should be dismissed for failure to state a claim,
27  the court has discretion to dismiss with or without leave to amend.  *See Davis v. Miranda*, 2020
28  WL 1904784, at *2 (E.D. Cal. Apr. 17, 2020).  Leave to amend should be freely granted when

justice so requires, Fed. R. Civ. P. 15(a), and if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se, *Lopez*, 203 F.3d at 1130-31; *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." (citation omitted)). However, if, after careful consideration, it is clear that a claim cannot be cured by amendment, the court may dismiss without leave to amend.  *Cato*, 70 F.3d at 1105-06; *Cal. Architectural Bldg. Prod. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987) ("Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility."). The Court will address whether plaintiff has leave to amend each individual claim.

## IV.   Discussion

### A.  Allegations in the Complaint

In the complaint, plaintiff makes general allegations that the County defendant and the Elk Grove Police Department engage in and condone "a continuing pattern and practice of race-based stops, detentions and searches of African-American motorists traveling in the public streets of Elk Grove and of the State of California."  (ECF No. 1 at 3.)  She alleges that "motorists of color, particularly African-American motorists, are targeted and subjected to these practices at grossly disproportionate rates."  (*Id.* at 8.)  Plaintiff claims that "all Defendants and [Elk Grove Police Department] supervisors have been aware [Elk Grove Police Department] officers are engaging in racial profiling, yet have failed and refused to stop it, thereby showing deliberate indifference to the rights of African-American motorists."  (*Id.* at 9.)

Specifically, plaintiff alleges that on July 17, 2023, defendant Durham, driving an unmarked vehicle, pulled plaintiff and her sister over while they were driving, "under the suspicion of reckless driving and a red light violation."[3]  (*Id.*)  Both plaintiff and her sister were asked to get out of the car while defendant Durham searched the car and trunk, and plaintiff's sister's purse.  (*Id.*)  Plaintiff's car was impounded.  (*Id.*)  The Elk Grove Police Department did

---

[3]  At the hearing held before the undersigned on December 11, 2024, plaintiff informed the Court that she was cited for reckless driving and has an ongoing proceeding in California state court.

1   not allow plaintiff's sister to take possession of the car, and plaintiff alleges that the Elk Grove

2   Police Department viewed her license and returned it damaged.  (*Id.*)  Plaintiff alleges that she

3   was racially profiled by defendant Durham, who she alleges was "observing traffic during the day

4   when the racial identity of a driver is more easily identified," and that defendant Durham pulled

5   plaintiff over "after harassing and tailgating vehicle driven by Plaintiff."  (*Id.*)

6          Regarding defendant Davis, plaintiff states that he "failed adequately to train [Elk Grove

7   Police Department] personnel and to promulgate appropriate policies to prevent race-based

8   vehicular stops."  (*Id.* at 5.)  Plaintiff also alleges that defendant Davis "directly or indirectly

9   participated in the authorization, planning and supervision of the actions of the individual [Elk

10  Grove Police Department] officers involved in this case."  (*Id.*)

11         Regarding defendant Smith, plaintiff only states that "Officer Smith was involved in the

12  stop of Plaintiff."  (*Id.* at 6.)

13         Plaintiff alleges fifteen different federal and state claims:  (1) "Violation of Title VI of the

14  Civil Rights Act of 1964" and 42 U.S.C. § 1983; (2) intentional race discrimination under Title

15  VI; (3) violation of the Fourteenth Amendment and § 1983; (4) violation of the Fourth and

16  Fourteenth Amendment and § 1983; (5) violation of the commerce clause and the privileges and

17  immunities clauses of Article IV of the United States Constitution and the Fourteenth

18  Amendment; (6) violation of Title VI and the Omnibus Crime Control and Safe Street Acts of

19  1968; (7) violation of 42 U.S.C. §1981; (8) violation of 42 U.S.C. § 1986; (9) violation of

20  California Government Code sections 11135 and 11139; (10) violation of the California

21  Constitution Article 1, § 7 and (11) § 13; (12) violation of California Civil Code section 52.1(b);

22  (13) intentional infliction of emotional distress; (14) negligent infliction of emotional distress;

23  and (15) declaratory relief.[4]  (*Id.* at 11-20.)

24  _____

25  [4]  Plaintiff's fifteenth claim is for declaratory relief.  "Declaratory relief should be denied when it
    will neither aid in clarifying and settling legal relations in issue nor terminate the proceedings and
26  accord the parties relief from the uncertainty and controversy they faced."  *Greater Los Angeles
    Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1112 (9th Cir. 1987).  Here, declaratory relief
27  would not serve any prospective purpose because the issues are too fact-specific to be helpful.
    Further, if this action reaches trial and the jury returns a verdict in favor of plaintiff, that verdict
28  would be a finding that plaintiff's constitutional rights were violated.  Accordingly, a declaration

1      **B.  The County Defendant's Motion to Dismiss (ECF No. 10)**

2              The County defendant moves to dismiss plaintiff's complaint on the grounds that

3      plaintiff's allegations are conclusory and do not implicate the County.  (ECF No. 10-1 at 5.)  The

4      County defendant argues that plaintiff "does not make specific factual allegations regarding

5      exactly *how* Defendant Sacramento County allegedly engages in and condones race-based stops

6      by another agency over which it has no control."  (*Id.*)  Further the County defendant alleges that

7      plaintiff's complaint does not allege that the County defendant was involved in any misconduct

8      during the July 17, 2023, stop.  (*Id.*)  Finally, the County defendant argues that it is not

9      vicariously liable for the City of Elk Grove.

10             In plaintiff's complaint, the only references to defendant County of Sacramento are

11     general allegations that defendant County of Sacramento engaged in and condoned a "continuing

12     pattern and practice of race-based stops, detentions and searches of African-American motorists

13     traveling on the public streets of Elk Grove and of the State of California."  (ECF No. 1 at 3.)

14     Plaintiff also alleges that defendant County of Sacramento "condone[s] and accept[s] the

15     procedures and policies practiced by the Elk Grove Police Department."  (*Id.*)  Plaintiff's

16     complaint has not alleged facts sufficient to state any claim against the County defendant.  *See*

17     *Iqbal*, 556 U.S. at 678.  While plaintiff brings almost all of her fifteen claims against

18     "defendants" as a group, plaintiff has not demonstrated how the County defendant specifically

19     violated her rights.

20             To the extent plaintiff attempts to hold the County defendant liable for violations of the

21     Fourth and Fourteenth Amendments under 42 U.S.C. § 1983, these claims also fail under *Monell*.

22     Under *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658 (1978), "[a] government

23     entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the

24     entity can be shown to be a moving force behind a violation of constitutional rights."  *Dougherty*

25     *v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694).  "[A] policy

26     is 'a deliberate choice to follow a course of action . . . made from among various alternatives by

27     ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28     that defendants violated plaintiff's rights is unnecessary.  Plaintiff's claim for declaratory relief
       should therefore be dismissed.

1  the official or officials responsible for establishing final policy with respect to the subject matter

2  in question.'" *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)

3  (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).  "A 'custom' for purposes of

4  municipal liability is a 'widespread practice that, although not authorized by written law or

5  express municipal policy, is so permanent and well-settled as to constitute a custom or usage with

6  the force of law.'" *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1147 (E.D. Cal. 2009)

7  (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).  "Liability for improper

8  custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices

9  of sufficient duration, frequency and consistency that the conduct has become a traditional

10  method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  After

11  establishing one of the methods of liability, "a plaintiff must also show that the circumstance was

12  (1) the cause in fact and (2) the proximate cause of the constitutional deprivation." *Id.*

13       Here, plaintiff has not alleged more than general statements that the County engaged in a

14  pattern and practice of race-based stops and detentions.  Plaintiff has not described any specific

15  policies or provided examples of instances where the County defendant engaged in stops or

16  detentions based on race.  One or two incidents is not enough to establish a policy or custom.  *See*

17  *Morales v. City of McFarland*, 2024 WL 99806, at *5 (E.D. Cal. Jan. 9, 2024).  Plaintiff needs to

18  allege more than general statements that the County engaged in race-based stops and detentions

19  and provide examples of specific policies or practices the County followed.  The conclusory

20  allegations in plaintiff's complaint are not enough to satisfy the *Monell* doctrine.  *Iqbal*, 556 U.S.

21  at 678.

22       Plaintiff has also not alleged that any County employee was involved in the incident that

23  occurred on July 17, 2023.  Plaintiff alleges that she was stopped by a City of Elk Grove police

24  detective, not a Sacramento County official.  Plaintiff was informed of the deficiencies of her

25  complaint by defendant Sacramento County's motion to dismiss, and did not offer more facts or

26  attempt to correct these deficiencies in her opposition to the motion.  When asked whether she

27  would like to share any additional facts about her claim during the December 11, 2024, hearing,

28  she said that her claim stands on her pleading.  Accordingly, plaintiff has not alleged facts

9

1  sufficient to show a well-settled pattern, custom, or practice of race-based stops or detentions.

2  Therefore, the motion to dismiss defendant County of Sacramento should be granted.  Because all

3  of plaintiff's allegations involve the City of Elk Grove and City officials, it appears any

4  amendment would be futile, and it is recommended that defendant Sacramento County's motion

5  to dismiss (ECF No. 10) be granted without leave to amend.

6        **C.  The City Defendants' Motion to Dismiss (ECF No. 8)**

7        **1.  Defendant Davis**

8        In the City defendants' motion to dismiss, they allege that plaintiff fails to state a claim

9  against defendant Davis.  (ECF No. 8 at 14.)  The City defendants argue that plaintiff's complaint

10  does not provide defendants notice of what legal claims are asserted against defendant Davis and

11  that the complaint conclusively states that defendant Davis failed to adequately train police

12  officers.  (*Id.*)  In her complaint, plaintiff initially states that she only sues defendant Davis in his

13  official capacity, but then later says that she sues "[a]ll of the defendants" in their individual and

14  official capacities.  (ECF No. 1 at 7.)  Plaintiff alleges that defendant Davis did not properly train

15  personnel or "promulgate appropriate policies to prevent race-based vehicular stops."  (ECF No. 1

16  at 5.)  Plaintiff also alleges that defendant Davis authorized and supervised the actions of the

17  officers in this case.  (*Id.*)

18        "[A] suit against a state official in his or her official capacity is not a suit against the

19  official but rather is a suit against the official's office.  As such, it is no different from a suit

20  against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation

21  omitted).  "[I]f individuals are being sued in their official capacity as municipal officials and the

22  municipal entity itself is also being sued, then the claims against the individuals are duplicative

23  and should be dismissed."  *Vance v. County of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal.

24  1996) (emphasis omitted); *see Johnson v. City of Vallejo*, 99 F.Supp.3d 1212, 1219 (E.D. Cal.

25  2015).

26        Because plaintiff is also suing the City of Elk Grove, plaintiff's claim against defendant

27  Davis in his official capacity is redundant.  *See Johnson*, 99 F.Supp.3d at 1219. To the extent

28  plaintiff is attempting to hold defendant Davis liable in his individual capacity for the actions of

1    defendants Durham and Smith this claim also fails.  Under 42 U.S.C. § 1983, a supervisor may be

2    held individually liable "only if there exists either (1) his or her personal involvement in the

3    constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful

4    conduct and the constitutional deprivation."  *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir.

5    2018) (internal quotations and citation omitted).  A supervisor cannot be held liable on a theory of

6    vicarious liability.  *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989).

7            Plaintiff has failed to allege enough facts to state a claim against defendant Davis.  *Iqbal*,

8    556 U.S. at 678.  She has provided no specific facts outlining how defendant Davis was

9    personally involved in the traffic stop.  Plaintiff's claims against defendant Davis should be

10   dismissed without leave to amend.

### 2.  Defendant Smith

12           The City defendants argue that plaintiff's complaint does not put defendant Smith on

13   notice of the allegations against her, and that the only allegations made against defendant Smith

14   are that she was "involved in the stop of Plaintiff."  (ECF No. 8 at 15.)

15           Plaintiff fails to state a claim against defendant Smith on the facts alleged.  As the City

16   defendants note, the only time plaintiff mentions defendant Smith is to say that she was "involved

17   in the stop of Plaintiff."  (ECF No. 1 at 6.)  But plaintiff does not mention defendant Smith at all

18   when she describes the traffic stop incident.  During the December 11, 2024, hearing, plaintiff

19   stated that defendant Smith arrived at the stop later with a canine unit.  Plaintiff has not alleged

20   specific facts against defendant Smith to state a claim.  Accordingly, plaintiff's claims against

21   defendant Smith should be dismissed.

22           However, plaintiff may be able to cure the deficiencies in the complaint regarding

23   defendant Smith by alleging additional facts, if any exist, about how defendant Smith was

24   involved in the traffic stop.  *See Crane v. City of Dunsmuir*, 2021 WL 431382, at *3 (E.D. Cal.

25   Feb. 8, 2021); *Lopez*, 203 F.3d at 1130.  Accordingly, the Court recommends that plaintiff's

26   claims against defendant Smith be dismissed with leave to amend.

27   ////

28   ////

### 3. Defendant City of Elk Grove

#### a. Claims 3 and 4: *Monell* Liability

The City defendants move to dismiss plaintiff's claims against the City of Elk Grove because the complaint does not satisfy the *Monell* doctrine.  (ECF No. 8 at 17.)  While plaintiff does not specifically include the City of Elk Grove in claims 3 and 4, plaintiff makes allegations about the City of Elk Grove's policies and practices.  Reading plaintiff's complaint liberally, the Court interprets plaintiff as asserting claims against the City of Elk Grove under *Monell*.  Plaintiff alleges that the policy of the Elk Grove Police Department "permits officers to detain a motorist during any traffic stop for the purpose of conducting a search" even though "the officers have no probable cause, or even reasonable suspicion, that the motorists are carrying illegal drugs or engaged in any criminal activity."  (ECF No. 1 at 7-8.)  Plaintiff further asserts that "all Defendants and [Elk Grove Police Department] supervisors have been aware [Elk Grove Police Department] officers are engaging in racial profiling, yet have failed and refused to stop it, thereby showing deliberate indifference to the rights of African-American motorists."  (*Id.* at 8.)  Plaintiff also alleges that defendant Davis in his official capacity failed to train officers and "promulgate appropriate policies to prevent race-based vehicular stops."  (ECF No. 1 at 5.)

Here, plaintiff has not alleged facts sufficient to show that the City of Elk Grove engaged in a practice, pattern, or custom that resulted in the violation of plaintiff's constitutional rights. *Hill v. City of Sacramento*, 2022 WL 17821715, at *5 (E.D. Cal. Dec. 20, 2022).  Plaintiff's allegations are conclusory; she does not allege any formally adopted written policies or describe specific customs or practices.  *See Smith v. City of Marina*, 709 F. Supp. 3d 926, 936 (N.D. Cal. 2024).  The Court notes that in plaintiff's second request for judicial notice, plaintiff says that "[s]hort of providing exhibits, admissions, statistics, and witness statements, all of the things discovery might uncover, the Plaintiff is unsure of what defendants expect sufficient allegations to be" regarding her allegations about the Elk Grove Police Department's policies of racial profiling.  (ECF No. 39 at 5.)  Plaintiff needs to allege more than general statements that the City engaged in race-based stops and detentions and provide examples of specific policies or practices the City followed.  Accordingly, plaintiff's complaint fails to state a claim.  See *AE v. County of*

1    *Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (after *Iqbal*, *Monell* claim must provide facts

2    demonstrating existence of policy or custom, not merely assert elements of municipal liability).

3          Plaintiff has also not alleged facts sufficient to show that there was any failure to train

4    officers.  Section 1983 does not provide for respondeat superior liability.  *Monell*, 436 U.S. at

5    691.  However, a municipality can be found liable for the actions of its agents where there is a

6    failure to train.  *Doe v. City of San* Diego, 198 F. Supp. 3d 1153, 1167 (S.D. Cal. 2016).  "[T]he

7    inadequacy of police training may serve as the basis for § 1983 liability only where the failure to

8    train amounts to deliberate indifference to the rights of persons with whom the police come into

9    contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  To state a claim for failure to train,

10    a plaintiff must allege at the pleading stage "that (1) [s]he was deprived of a constitutional right,

11    (2) the City had a training policy that amounts to deliberate indifference to the [constitutional]

12    rights of the persons with whom [its police officers] are likely to come into contact and (3) [her]

13    constitutional injury would have been avoided had the City properly trained those officers." *Doe*,

14    198 F. Supp. 3d at 1167 (quoting *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir.

15    2007)).  In the context of a failure to train claim, the Supreme Court has found that to show

16    deliberate indifference the municipal actor must disregard a known or obvious consequence of his

17    action, which ordinarily requires that there be a pattern of similar constitutional violations by

18    untrained employees.  *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011).  However, "in a narrow

19    range of circumstances, a pattern of similar violations might not be necessary to show deliberate

20    indifference." *Connick*, 563 U.S. at 63 (citation and quotation marks omitted).

21          Here, while plaintiff has alleged that her constitutional right was violated, there is no

22    evidence presented that defendant Davis ignored a known consequence of his actions or that there

23    is a pattern of untrained officers.  *Connick*, 563 U.S. at 61-62.  Plaintiff describes one traffic

24    incident where she was pulled over for a violation.  Even if her Fourth Amendment survives the

25    motion to dismiss, she has only alleged one incident.  *Hyde v. City of Willcox*, 23 F.4th 863, 875

26    (9th Cir. 2022) ("an inadequate training policy . . . cannot be inferred from a single incident").

27    ////

28    ////

1   Plaintiff's *Monell* claims against the City of Elk Grove should be dismissed, but with

2   leave to amend if she can provide further factual allegations.  *County of Tulare*, 666 F.3d at 636-

3   38.

4   **b.  Claims 1, 2, 6: Title VI of the Civil Rights Act of 1964**

5   Plaintiff brings three claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C.

6   § 2000d.  In Claim 1, plaintiff alleges "race discrimination in federally funded programs" against

7   the Elk Grove Police Department.  (ECF No. 1 at 11-12.)  Claim 2 alleges "intentional race

8   discrimination" against the Elk Grove Police Department.  (*Id.* at 13.)  No defendant is named in

9   Claim 6.[5]  (*Id.* at 16.)  Plaintiff alleges that "methods employed by the [Elk Grove Police

10  Department] have a discriminatory impact on motorists of color traveling through California,

11  including plaintiff[]."  (*Id.* at 12.)  Plaintiff also alleges that the Elk Grove Police Department

12  engaged in intentional discrimination.  The City defendants argue that plaintiff has not alleged

13  that they denied her participation in any program or activity receiving federal financial assistance,

14  and that her first and second causes of action are conclusory and devoid of factual allegations.

15  (ECF No. 8 at 20.)

16  42 U.S.C. § 2000d provides: "No person in the United States shall, on the ground of race,

17  color, or national origin, be excluded from participation in, be denied the benefits of, or be

18  subjected to discrimination under any program or activity receiving Federal financial assistance."

19  42 U.S.C. § 2000d.  "[P]rivate individuals may sue to enforce § 601 of Title VI and obtain both

20  injunctive relief and damages."  *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001).  "To state a

21  claim for damages under 42 U.S.C. § 2000d, *et seq.*, a plaintiff must allege that (1) the entity

22

23  [5]  Plaintiff's sixth claim also alleges a violation of the "nondiscrimination section of the Omnibus
    Crime Control and Safe Street Acts of 1968, 28 U.S.C. § 3789d(c)."  (ECF No. 1 at 16.)  Title 34
24  of United States Code, Section 10228 (formerly 42 U.S.C. § 3789d) prohibits discrimination in
    any program or activity funded by the Act based on "race, color, religion, national origin, or sex."
25  34 U.S.C. § 10228(c).  To exhaust administrative remedies under 34 U.S.C. § 10228, an
    "administrative complaint [must be] filed with the Office of Justice Programs or any other
26  administrative enforcement agency."  34 U.S.C. § 10228(c)(4)(A); *O.L. v. City of El Monte*, 2020
    WL 4434949, at *16 (C.D. Cal. June 26. 2020).  Plaintiff has not made any argument related to
27  this claim and has not offered evidence about whether she exhausted her administrative remedies.
    To the extent plaintiff attempts to bring a claim under this statute, it should be dismissed.
28

14

1  involved is engaging in racial discrimination; and (2) the entity involved is receiving federal

2  financial assistance." *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir.

3  1994), *overruled on another ground by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d

4  1131, 1133 (9th Cir. 2001). "Title VI itself directly reach[es] only instances of intentional

5  discrimination." *Alexander*, 532 U.S. at 281 (alteration in original) (citation omitted).

6        Here, plaintiff fails to state a claim against the City of Elk Grove under Title VI.  Plaintiff

7  alleges that the Elk Grove Police Department receives federal funds.  (ECF No. 1 at 12.)

8  However, she only makes general allegations that the "methods employed" by the Elk Grove

9  Police Department have a discriminatory impact on motorists of color.  (*Id.*)  She states that the

10  Elk Grove Police Department has "relied upon race and ethnicity in conducting stops, detentions,

11  interrogations and searches of motorists" and that they have engaged in an "unabated, continuing

12  pattern and practice or discrimination."  (*Id.* at 7.)  She also alleges that "motorists of color,

13  particularly African-American motorists, are targeted and subjected to these practices at grossly

14  disproportionate rates."  However, plaintiff does not provide any facts supporting her general

15  allegations or show how defendant Elk Grove Police Department *intentionally* discriminated

16  against plaintiff based on her "race, color, or national origin."  Plaintiff's allegations involve a

17  traffic stop where she was pulled over for reckless driving and a red light violation.  Plaintiff has

18  not pled facts that support a claim that the Elk Grove Police Department intentionally

19  discriminated against her based on this traffic stop.  *See Iqbal*, 556 U.S. at 678.  Plaintiff's claims

20  relating to Title VI should therefore be dismissed with leave to amend should she be able to

21  provide additional factual allegations.  *See Lopez*, 203 F.3d at 1130-31.

22        **4. Defendant Durham**

23        The only facts alleged in plaintiff's complaint relate to the traffic stop on July 17, 2023,

24  involving Defendant Durham.  In the description of the incident, plaintiff alleges that she was

25  subjected to an unreasonable search and seizure and racial profiling by Defendant Durham.  (ECF

26  No. 1 at 9.)  Accordingly, the Court will analyze plaintiff's third, fourth, tenth, and eleventh

27  claims with respect to defendant Durham.

28  ////

### a. Claims 3 and 4: 42 U.S.C. §1983 Claims

Plaintiff's claims alleging violations of her constitutional rights arise under 42 U.S.C. § 1983.  Section 1983 provides a cause of action for the violation of a plaintiff's constitutional rights by persons acting under color of state law.  *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  To state a claim under § 1983, plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived her of rights secured by the Constitution or laws of the United States.  *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997).  There is no respondeat superior liability under § 1983, and therefore, each defendant is only liable for his or her own misconduct.  *Iqbal*, 556 U.S. at 677.

To bring a claim under § 1983, plaintiff must demonstrate that each defendant personally participated in the deprivation of her rights.  *Id.*; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009).  Further, the complaint must allege that every defendant acted with the requisite state of mind to violate the underlying constitutional provision.  *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1070 (9th Cir. 2012).

### i. Claims 4 and 11: Fourth Amendment

Plaintiff's fourth and eleventh claims allege violations of her federal and California Constitutional rights to be free from unreasonable searches and seizures.  (ECF No. 1 at 14, 19.)  Both the Fourth Amendment and Article I of the California Constitution prohibit unreasonable searches and seizures.  *See* U.S. Const. amend. IV; Cal. Const. art. I, § 13.  "California has 'ordinarily resolved questions about the legality of searches and seizures by construing the Fourth Amendment and Article I, Section 13 in tandem.'"[6]  *Maric v. Alvarado*, 748 F. App'x 747, 749-50 (9th Cir. 2018) (unpublished) (quoting *People v. Buza*, 4 Cal.5th 658, 686 (2018)); *see Chang v. County of Siskiyou*, 2024 WL 3890000, at *12 (E.D. Cal. Aug. 21, 2024).  "[T]he right to be

---

[6]  The City defendants argue plaintiff's claims under the California Constitution, Article I, Sections 7(a) and 13 should be dismissed because they do not provide a right for damages.  (ECF No. 8 at 29-30.)  However, plaintiff's complaint broadly requests damages, injunctive relief, and declaratory relief.  Accordingly, the Court need not address whether the California Constitution confers a private right for damages.

1   free from unreasonable searches under Art. I § 13 of the California Constitution parallels the

2   Fourth Amendment inquiry . . . ." *Sanchez v. Los Angeles Dep't of Transportation*, 39 F.4th 548,

3   553 (9th Cir. 2022) (quoting *Sanchez v. County of San Diego*, 464 F.3d 916, 928–29 (9th Cir.

4   2006)).  Plaintiff claims that "defendants" subjected her to a "lengthy detention, interrogation and

5   search."  (*Id.*)  Most of the specific facts alleged in plaintiff's complaint relate to the traffic stop

6   by defendant Durham on July 17, 2023.  The City defendants argue that this claim against

7   defendant City of Elk Grove should be dismissed under the *Monell* doctrine because plaintiff only

8   pleads conclusory allegations and that the Fourth Amendment claim should be dismissed because

9   there was probable cause to stop and detain plaintiff.  (ECF No. 8 at 17, 22.)

10         The Fourth Amendment provides that "[t]he right of the people to be secure in their

11   persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

12   violated."  U.S. Const. amend. IV.  "[T]he Fourth Amendment is enforceable against the States

13   through the Fourteenth Amendment."  *Camara v. Mun. Court of City & Cty. of San Francisco*,

14   387 U.S. 523, 528 (1967).

15                          **1.   Traffic Stop By Defendant Durham**

16         Here, plaintiff alleges that defendant Durham pulled her and her sister over in an

17   "unmarked civilian vehicle" after defendant Durham was "harassing and tailgating [the] vehicle

18   driven by Plaintiff."  (ECF No. 1 at 9.)

19         "An investigatory stop (temporary detention) may be conducted without violating the

20   Fourth Amendment's ban on unreasonable searches and seizures if the investigatory stop is

21   otherwise lawful."  *San Joaquin Deputy Sheriffs' Ass'n v. County of San Joaquin*, 898 F. Supp.

22   2d 1177, 1185 (E.D. Cal. 2012) (citing *Arizona v. Johnson*, 555 U.S. 323, 326 (2009)).  During a

23   traffic stop, an investigatory stop is lawful "whenever it is lawful for police to detain an

24   automobile and its occupants pending inquiry into a vehicular violation."  *Id.* at 327.  To initiate

25   an investigatory stop of a motorist, there must "at least exist reasonable suspicion that the

26   motorist is engaging in illegal activity."  *Liberal v. Estrada*, 632 F.3d 1064, 1077 (9th Cir. 2011)

27   (citation omitted), *abrogated on other grounds by Hampton v. California*, 83 F.4th 754, 772 (9th

28   Cir. 2023).  To form a reasonable suspicion, an officer must have "specific, articulable facts

1   which, together with objective and reasonable inferences, form the basis for suspecting that the

2   particular person detained engaged in criminal activity." *Id.* (citing *United States v. Lopez-Soto*,

3   205 F.3d 1101, 1105 (9th Cir. 2000)). "As a general matter, the decision to stop an automobile is

4   reasonable where the police have probable cause to believe that a traffic violation has occurred."

5   *Whren v. United States*, 517 U.S. 806, 810 (1996).

6          Plaintiff admits that she was stopped because of suspicion of reckless driving and a red

7   light violation. (ECF No. 1 at 9.) Reckless driving and running a red light are traffic violations

8   that would give defendant Durham probable cause to stop plaintiff. *See San Joaquin Deputy*

9   *Sheriffs' Ass'n v. County of San Joaquin*, 898 F. Supp. 2d 1177, 1185-86 (E.D. Cal. 2012). In her

10  complaint, plaintiff does not allege that she did not actually run the red light or that she was not

11  driving recklessly. Further, at the hearing on December 11, 2024, the parties informed the court

12  that plaintiff was cited for reckless driving and has a pending criminal trial in California state

13  court regarding the reckless driving citation. Plaintiff's complaint also does not address whether

14  defendant had probable cause to stop plaintiff, nor does it allege facts showing defendant lacked

15  probable cause. The Court therefore finds that plaintiff's complaint lacks sufficient facts to make

16  out a claim under the Fourth Amendment against defendant Durham based on the traffic stop.

17  Therefore, the City defendants' motion to dismiss should be granted as to defendant Durham's

18  stop of plaintiff, without leave to amend. *See Franciscan Ceramics, Inc.*, 818 F.2d at 1472.

19                              **2.   Search of Vehicle by Defendant Durham**

20         Plaintiff also alleges that during the traffic stop, defendant Durham searched plaintiff's

21  "car/trunk and [plaintiff's sister's] purse thoroughly." (ECF No. 1 at 9.) Warrantless searches by

22  law enforcement officers "are per se unreasonable under the Fourth Amendment—subject only to

23  a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S.

24  347, 357 (1967) (footnote omitted). Because of this, the government bears the burden of

25  demonstrating that a warrantless search or seizure falls within an exception to the warrant

26  requirement. *United States v. Crevantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). One exception to

27  the warrant requirement is the automobile exception, which allows officers to search a vehicle if

28  the officers have "probable cause to believe a vehicle contains contraband" or evidence of

criminal activity. *United States v. Phillips*, 9 F. Supp. 3d 1130, 1135, 1137 (E.D. Cal. 2014) (citation omitted); *see United States v. Ross*, 456 U.S. 798, 825 (1982).

Here, plaintiff has not alleged that defendants lacked probable cause to search her vehicle. However, neither have the City defendants demonstrated that they had probable cause to believe plaintiff's vehicle contained contraband.  The City defendants argue that the search was proper under the inventory search exception, which allows the search of a lawfully impounded vehicle. (ECF No. 8 at 22.)  Taking the allegations in plaintiff's complaint as true, plaintiff's vehicle was searched before it was impounded.  (ECF No. 1 at 9.)  During the December 11, 2024, hearing, plaintiff also stated that her vehicle was searched before the tow truck was called to remove her vehicle.  Additionally, as discussed below, it is unclear whether plaintiff's vehicle was lawfully impounded.  Plaintiff has sufficiently pled an unreasonable search under the Fourth Amendment, and the City defendants' motion to dismiss on this ground should be denied.

### 3.  Seizure of Vehicle by Defendant Durham

Plaintiff further alleges that defendant Durham impounded plaintiff's car.  (ECF No. 1 at 9.)  While plaintiff does not specifically allege that impounding her vehicle violated her Fourth Amendment rights, plaintiff states that her vehicle was impounded and the "Elk Grove police department refused to permit [plaintiff's sister] to gain lawful possession of the vehicle in the name of [plaintiff]." (*Id.*)  Construing plaintiff's complaint liberally, the court reads plaintiff's complaint as contesting the impoundment of her vehicle.  The City defendants argue that under California law, an officer may impound a vehicle when a driver is engaged in reckless driving, and that a vehicle that is going to be lawfully impounded may be searched under the inventory search exception.  (ECF No. 8 at 22.)

Another exception to the warrant requirement is the community caretaking exception, which authorizes a police officer to "impound vehicles that jeopardize public safety and efficient movement of vehicular traffic." *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005) (citation omitted).  "The reasonableness of an impoundment under the community caretaking function does not depend on whether the officer had probable cause to believe that there was a traffic violation, but on whether the impoundment fits within the 'authority of police to seize and

1  remove from the streets vehicles impeding traffic or threatening public safety and convenience.'"

2  *Id.* (citing *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)).  The government may not

3  impound a vehicle by only citing to the California Vehicle Code or police policy on

4  impoundments.  *Crevantes*, 703 F.3d at 1142.  The officer must consider the location of the

5  vehicle and whether it is actually impeding traffic or threatening public safety.  *Id.*

6        Here, it is the City defendants' burden to show that impounding plaintiff's vehicle falls

7  within the community caretaking exception to the Fourth Amendment's warrant requirement.  *See*

8  *Crevantes*, 703 F.3d at 1141.  Based on the facts alleged in plaintiff's complaint, it appears that

9  defendant Durham lawfully stopped plaintiff, but probable cause to believe there was a traffic

10  violation is not enough on its own to show that defendant Durham lawfully impounded plaintiff's

11  vehicle.  *Miranda*, 429 F.3d at 864.  Further, a California statue on its own is also not enough of a

12  basis to lawfully impound a vehicle under the community caretaking exception.  *Crevantes*, 703

13  F.3d at 1142.  Taking the allegations in plaintiff's complaint as true, plaintiff has alleged that she

14  was pulled over for a traffic violation, her vehicle was searched, and then her vehicle was

15  impounded.  The City defendants have not alleged facts in their opposition showing that

16  plaintiff's vehicle was impounded for a public safety purpose or convenience.  The City

17  defendants' contention that plaintiff being pulled over for reckless driving gave defendant

18  Durham authority to impound the vehicle under California Vehicle Code section 23109.2, without

19  more, is not enough to support dismissal.  Accordingly, the City defendants' motion to dismiss

20  plaintiff's Fourth Amendment claim related to defendant Durham should be denied with respect

21  to the impoundment of plaintiff's vehicle.

22                              **4.  Qualified Immunity**

23        The City defendants argue that defendant Durham is entitled to qualified immunity.  (ECF

24  No. 8 at 18-19.)  "Qualified immunity is an affirmative defense that must be raised by a

25  defendant."  *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001); *see Harlow v. Fitzgerald*,

26  457 U.S. 800, 815 (1982).  When a defendant asserts qualified immunity in a motion to dismiss

27  under Rule 12(b)(6), "dismissal is not appropriate unless [the court] can determine, based on the

28  complaint itself, that qualified immunity applies."  *Id.*  "Determining whether officials are owed

                                         20

1    qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the

2    party asserting the injury, the facts alleged show the officer's conduct violated a constitutional

3    right; and (2) if so, whether the right was clearly established in light of the specific context of the

4    case." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Krainski v. Nevada ex rel.*

5    *Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010)).

6         Here, taking plaintiff's allegations as true, she has stated a claim for the violation of a

7    constitutional right.  Additionally, the right to be free from unreasonable interferences in property

8    is a longstanding and clearly established right.  *See San Joaquin Deputy Sheriffs' Ass'n*, 898 F.

9    Supp. 2d at 1187.  Therefore, defendant Durham is not entitled to qualified immunity for this

10   aspect of plaintiff's Fourth Amendment claim at this stage of the case.

11                          **ii.    Plaintiff's Equal Protection Claims**

12        Plaintiff's third and tenth claims are Equal Protection claims under the federal and

13   California constitutions.  The Court will address these claims together because "[t]he equal

14   protection analysis under the California Constitution is 'substantially similar' to analysis under

15   the federal Equal Protection Clause." *Olson v. California*, 104 F.4th 66, 76 (9th Cir. 2024)

16   (quoting *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004)) (addressing

17   claims for Equal Protection under the federal and California constitutions together); *see also*

18   *Chang v. County of Siskiyou*, 2024 WL 3890000, at *12 (E.D. Cal. Aug. 21, 2024).  Plaintiff

19   alleges that "Defendants" engaged in a "continuing pattern and practice of intentional race

20   discrimination."  (ECF No. 1 at 13.)  The law enforcement defendants argue that plaintiff has

21   failed to state a claim because she has not provided facts that support her claim and makes general

22   boilerplate claims.  (ECF No. 8 at 21.)

23        The Equal Protection clause requires that persons who are similarly situated be treated

24   alike.  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  An equal

25   protection claim may be established by showing that the defendant intentionally discriminated

26   against the plaintiff based on the plaintiff's membership in a protected class, *Serrano v. Francis*,

27   345 F.3d 1071, 1082 (9th Cir. 2003), or that similarly situated individuals were intentionally

28   treated differently without a rational relationship to a legitimate state purpose, *Village of*

                                            21

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). A plaintiff must allege sufficient facts either showing intentional unlawful discrimination or "that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

Here, plaintiff fails to sufficiently allege that she was intentionally discriminated against based on her membership in a protected class, or that she was intentionally treated differently than similarly situated individuals without a rational relationship to a legitimate state purpose. *See Iqbal*, 556 U.S. at 678. Plaintiff was allegedly pulled over while driving recklessly and for a red light violation. Plaintiff states generally that "[p]olice officers constantly pull over cars driven by African-Americans, for certain traffic violations, but rarely pull over white drivers for the same violations." (ECF No. 1 at 7.) However, plaintiff does not identify any similarly situated individuals or instances where a similarly situated individual was treated differently. *See Todd v. Briesenick*, 2013 WL 2151658, at *5 (E.D. Cal. May 16, 2013) (granting motion to dismiss where "plaintiff [did] not provide specific facts, beyond mere speculation, supporting his claims that defendants treated him differently from similarly situated persons"). Because plaintiff's claim involves one traffic stop, she fails to state an equal protection claim, and the City defendants' motion to dismiss should be granted regarding this claim without leave to amend. *See Franciscan Ceramics, Inc.*, 818 F.2d at 1472.

### b. Claim 5: Commerce Clause

Plaintiff's fifth claim is for a violation of the Commerce Clause. (ECF No. 1 at 15.) Plaintiff alleges that defendants "have caused Plaintiff to be penalized and deterred in the exercise of her fundamental right to interstate travel and migration on account of her race and/or ethnicity and/or national origin." (*Id.*) Defendants argue that plaintiff has made no reference to any interstate commerce in her complaint or suggested how a routine traffic stop burdens interstate commerce. (ECF No. 8 at 24.)

"The Commerce Clause of the United States Constitution assigns to Congress the authority '[t]o regulate Commerce with foreign Nations, and among the several States.'" *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015) (quoting U.S. Const.

1    art. I, § 8, cl. 3) (alteration in original). "Generally speaking, the Commerce Clause protects

2    against inconsistent legislation arising from the projection of one state regulatory regime into the

3    jurisdiction of another State." *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 336-37 (1989).

4    "[S]pecifically, the Commerce Clause dictates that no State may force an out-of-state merchant to

5    seek regulatory approval in one State before undertaking a transaction in another." *Id.* at 337.

6            Here, plaintiff fails to state a claim under the Commerce Clause.  She makes no

7    allegations implicating interstate commerce, nor does she explain how a traffic stop affects

8    interstate commerce.  Indeed, plaintiff is a California citizen and the traffic stop occurred in

9    California.  (ECF No. 1 at 5.)  Accordingly, the City defendants' motion should be granted

10   regarding this claim, and plaintiff's Commerce Clause claim should be dismissed without leave to

11   amend because amendment would be futile.  *See Franciscan Ceramics, Inc.*, 818 F.2d at 1472.

12                         **c.  Claim 5: Privileges and Immunities Clauses**

13           Plaintiff's fifth claim is also for violations of the Privileges and Immunities Clauses under

14   Article IV of the United States Constitution and under the Fourteenth Amendment.  The City

15   defendants argue that plaintiff has not stated a viable claim under Article IV because her

16   complaint "does not involve any relevant issues to the vitality of the Nation as a single entity."

17   (ECF No. 8 at 23.)

18           The Privileges and Immunities Clause of Article IV prohibits states from discriminating

19   against out-of-state residents when it comes to certain "fundamental" rights.  *McBurney v. Young*,

20   569 U.S. 221, 226 (2013).  The clause's protections do not apply to laws that do not discriminate

21   against non-residents.  *See id.* at 227-28.

22           Here, plaintiff's allegations fail to allege any discrimination against non-California

23   residents.  Accordingly, the law enforcement defendant's motion as to this claim should be

24   granted, and plaintiff's claim should be dismissed without leave to amend.  *See Franciscan*

25   *Ceramics, Inc.*, 818 F.2d at 1472.

26           The City defendants also argue that plaintiff's claim under the Fourteenth Amendment

27   fails because her complaint does not implicate interstate travel and migration.  (ECF No. 8 at 24.)

28   The Supreme Court has applied the Privileges or Immunities Clause of the Fourteenth

                                                    23

Amendment narrowly, to "protect[] only those rights 'which owe their existence to the Federal government, its National character, its Constitution, or its laws.'" *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 754 (2010) (quoting *Slaughter-House Cases*, 16 Wall. 36, 79 (1873)). "The clause protects 'very few rights,' namely 'the right to petition Congress, the right to vote in federal elections, the right to interstate travel or commerce, the right to enter federal lands, or the rights of a citizen while in the custody of federal officers.'" *Peterson v. Farrow*, 2016 WL 3477238, at *5 (E.D. Cal. June 27, 2016) (citation omitted).

Plaintiff fails to allege any facts in the complaint which demonstrate how a traffic stop impacts her right to interstate travel. Accordingly, plaintiff has failed to allege a plausible claim under the Privileges or Immunities Clause of the Fourteenth Amendment and the City defendants' motion on this claim should be granted. The City defendants' motion to dismiss should be granted regarding this claim and plaintiff's claim should be dismissed without leave to amend because amendment would be futile. *See Franciscan Ceramics, Inc.*, 818 F.2d at 1472.

### d.  Claim 7: 42 U.S.C. § 1981

Plaintiff's seventh claim is for a violation of 42 U.S.C. § 1981. The City defendants argue that plaintiff has not alleged any contractual relationship between herself or any defendant. (ECF No. 8 at 25.)

Section 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Plaintiff's § 1981 claim fails because "Section 1981 establishes substantive rights that a state actor may violate. It does not itself contain a remedy against a state actor for such violations. A plaintiff seeking to enforce rights secured by § 1981 against a state actor must bring a cause of action under § 1983." *Yoshikawa v. Seguirant*, 74 F.4th 1042, 1047 (9th Cir. 2023). Nor does the substance of plaintiff's complaint make out a claim. "To state a claim pursuant to

24

section 1981, a plaintiff must allege (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *Keum v. Virgin America Inc.*, 781 F.Supp.2d 944, 954 (N.D. Cal. 2011).  The complaint fails to state any facts linking defendants' activity to an intent to discriminate.  Plaintiff has not alleged any facts showing that her race was the reason she was pulled over.  As plaintiff admits, she was pulled over because of reckless driving and a red light violation.  Because plaintiff has not properly brought her claim under § 1983 plaintiff's claim should be dismissed with leave to amend.

### e.   Claim 8: Claim under 42 U.S.C. § 1986

Plaintiff's eighth claim is for violation of 42 U.S.C. § 1986.  Plaintiff argues that defendants "by way of a conspiracy among them" have caused plaintiff's civil rights to be violated.  (ECF No. 1 at 17.)  The City defendants argue that plaintiff's claim fails because she has not first pled a claim under section 1985, and that she has not alleged any agreement or meeting of the minds of defendants.  (ECF No. 8 at 26.)

In order to state a claim under section 1986, plaintiff must state a valid claim under section 1985.  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988.)  Under section 1986, a person is liable if they know of an impending violation of section 1985 but does not prevent the violation.  *Id.*  As relevant here, liability exists under section 1985(2), if

> [T]wo or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

42 U.S.C. § 1985(2).  A conspiracy claim under § 1985(2) requires a direct or indirect purpose to deprive any persons of the equal protection of the laws, or the equal privileges or immunities under the laws, and a class race-based animus.  *See Bretz v. Kelman*, 773 F.2d 1026, 1028 (9th Cir. 1985) (en banc).  Under section 1985(3), liability exists

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or

1  of equal privileges and immunities under the laws. . . .

2  42 U.S.C. § 1985(3).  A racial, or other class-based, invidiously discriminatory animus is an

3  indispensable element of the claim.  *See Bray v. Alexandria Women's Health Clinic*, 506 U.S.

4  263, 267-69 (1993).

5  Here, plaintiff's section 1986 claims fails because she has not adequately pled a claim

6  under section 1985.  For this reason, the City defendants' motion to dismiss regarding plaintiff's

7  section 1986 claim should be granted, but with leave to amend if plaintiff can state a claim under

8  section 1985.

9  **5.  Plaintiff's State Law Claims**

10  The City defendants argue that plaintiff's state law claims for money damages are barred

11  by the presentation requirements of the California Government Claims Act.  (ECF No. 8 at 26-

12  27.)  Under the California Government Claims Act,[7] set forth in California Government Code

13  sections 810 *et seq.*, a plaintiff may not bring a suit for monetary damages against a public

14  employee or entity unless the plaintiff first presented the claim to the California Victim

15  Compensation and Government Claims Board ("Board"), and the Board acted on the claim, or the

16  time for doing so expired.  Compliance with this "claim presentation requirement" constitutes an

17  element of a cause of action for damages against a public entity or official.  *State v. Superior*

18  *Court (Bodde)*, 32 Cal.4th 1234, 1244 (2004).  Thus, timely presentation of a claim under the

19  Government Claims Act is an element of the cause of action and must be pled in the complaint.

20  *Id.* at 1237, 1240; *see also Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir.

21  1995).  The plaintiff must present facts demonstrating compliance, rather than simply conclusions

22  suggesting as much.  *Shirk v. Vista Unified School Dist.*, 42 Cal.4th 201, 209 (2007).  Such

23  requirements also apply to state law claims included in a federal action.  *See Volis v. Housing*

24  *Auth. of the City of L.A. Emps.*, 670 F. App'x 543, 544 (9th Cir. 2016) (unpublished).

25

26  [7]  *See Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111,
1124 (9th Cir. 2013) ("Consistent with the California Supreme Court, we 'adopt the practice of

27  referring to the claims statutes as the Government Claims Act, to avoid the confusion engendered
by the informal short title Tort Claims Act.'" (quoting *City of Stockton v. Superior Court*, 42 Cal.

28  4th 73 (2007)).)

1    To be timely, a claim must be presented to the Board "not later than six months after the

2    accrual of the cause of action."  Cal. Govt. Code § 911.2.  Thereafter, "any suit brought against a

3    public entity" must be commenced no more than six months after the public entity rejects the

4    claim.  Cal. Gov. Code, § 945.6, subd. (a)(1).  Federal courts must require compliance with the

5    California Government Claims Act for pendant state law claims that seek damages against state

6    employees or entities.  *Willis v. Reddin*, 418 F.2d 702, 704-05 (9th Cir. 1969); *Mangold*, 67 F.3d

7    at 1477.  State tort claims included in a federal action, filed pursuant to 42 U.S.C. § 1983, may

8    proceed only if the claims were presented in compliance with the applicable exhaustion

9    requirements.  *Karim-Panahi*, 839 F.2d at 627; *Butler v. Los Angeles County*, 617 F. Supp. 2d

10   994, 1001 (C.D. Cal. 2008).

11   Here, plaintiff alleges that she filed an administrative complaint with the Elk Grove Police

12   Department and that she included this with her complaint.  (ECF No. 1 at 9.)  Plaintiff actually

13   only included the responses she received from this administrative complaint.  (*Id.* at 24-26.)

14   Additionally, plaintiff has provided no evidence that she complied with the California

15   Government Claims Act by presenting her claim to the California Victim Compensation and

16   Government Claims Board.  Accordingly, plaintiff has not properly complied with the

17   presentation requirements, and the City defendants' motion to dismiss should be granted as to

18   plaintiff's state law claims with leave to amend if plaintiff can show she complied with the

19   presentation requirement.

20   **a.  Claims 13 and 14: Tort Causes of Action**

21   Plaintiff's thirteenth and fourteenth claims for intentional infliction of emotional distress

22   and negligent infliction of emotional distress also fail because plaintiff has not sufficiently plead

23   the elements of these claims.  Plaintiff alleges in various places in her complaint that defendants'

24   actions caused her "humiliation, mental pain and suffering."  (*See, e.g.*, ECF No. 1 at 14.)  The

25   City defendants argue that plaintiff's claims are barred by the California Government Claims Act.

26   (ECF No. 8 at 26-28.)

27   As an initial matter, the City defendants argue that plaintiff's claims are barred by

28   statutory immunities in the Government Claims Act sections 815 and 820.2.  (ECF No. 8 at 27-

27

28.)  The City defendants argue that there is no statutory basis for the intentional or negligent infliction of emotional distress claims against the City defendants pursuant to California Government Code section 815; thus the claims against the City must fail.  However, section 815.2 explicitly provides for vicarious liability and states that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment."  *Id.*; *see Luttrell v. Hart*, 2020 WL 5642613, at *6 (N.D. Cal. Sept. 22, 2020).  "[U]nder California law municipalities enjoy no special immunity for negligence actions [and that a municipality] is liable for the negligence of [its employees] to the same extent that [the employees] would be liable individually."  *Luttrell*, 2020 WL 5642613, at *6 (quoting *Hernandez v. City of San Jose*, 2016 WL 5944095, at *45-46 (N.D. Cal. Oct. 13, 2016)).  Therefore, the City of Elk Grove may be held liable for causes of action pursued under the doctrine of vicarious liability whenever a claim survives against a defendant officer.  Accordingly, the motion to dismiss should be denied on this ground.

The City defendants also argue statutory immunity under section 820.2.  (ECF No. 8 at 28.)  Section 820.2 states that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  However, this section "only applies to policy decisions that involve 'deliberate and considered policy decisions,' not to operational decisions made by the police purporting to enforce the law."  *Lennox v. City of Sacramento*, 2024 WL 3845378, at *29 (E.D. Cal. Aug. 16, 2024) (quoting *Caldwell v. Montoya*, 10 Cal. 4th 972, 981-82 (1995); *see also Sharp v. County of Orange*, 871 F.3d 901, 920 (9th Cir. 2017) ("As a matter of law, section 820.2 ['discretionary'] immunity does not apply to an officer's decision to detain or arrest a suspect" and "covers only 'policy' decisions made by a 'coordinate branch[] of government,' not 'operational decision[s] by the police purporting to apply the law.'" (alterations in original)).  At this stage in the case, plaintiff has not sufficiently alleged that her emotional distress "arose from the actions within the individual defendants' discretion."  *Bailey v. Shasta Union High School District*, 2024 WL 4826447, at *4 (E.D. Cal. Nov. 19, 2024).  Plaintiff states that she "has been very upset since her unjustified

1    stop" and that it is "difficult for her to accept that she was stopped, subjected to unwarranted

2    search and examination." (ECF NO. 1 at 9.) However, she has not alleged sufficient details

3    about the cause of her alleged emotional distress. Neither have defendants demonstrated that the

4    way an officer conducts a search and seizure is discretionary so as to provide immunity.

5    Accordingly, the City defendants' motion to dismiss on statutory immunity grounds should be

6    denied.

7         Regardless, plaintiff has not sufficiently plead the elements of these claims because the

8    claims do not specify the specific individuals who committed the torts or what specific duties are

9    owed to the plaintiff. *See J.C. v. City of Vallejo*, 2024 WL 5146021, at *6 (E.D. Cal. Dec. 17,

10   2024). "Negligent infliction of emotional distress is a form of the tort of negligence; plaintiff

11   must demonstrate facts satisfying the elements of duty, breach of duty, causation, and damages."

12   *Hill*, 2022 WL 17821715, at *7; (citing *Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th

13   124, 129 (1993)). In California "there is no independent tort of negligent infliction of emotional

14   distress;" rather, "[t]he tort is negligence, a cause of action in which a duty to the plaintiff is an

15   essential element." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984 (1993). The

16   existence of a duty is a question of law. *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*,

17   48 Cal.3d 583, 588 (1989). The elements of a cause of action for negligent infliction of

18   emotional distress are: (1) the "defendant engaged in negligent conduct"; (2) the "plaintiff

19   suffered serious emotional distress"; and (3) the "defendants' negligent conduct was a cause of

20   the serious emotional distress." *Butler-Rupp v. Lourdeaux*, 134 Cal.App.4th 1220, 1226 n.1

21   (2005).

22        Plaintiff has offered no facts supporting any of the elements or described how she suffered

23   serious emotional distress.

24        A claim for intentional infliction of emotional distress requires "(1) extreme and

25   outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

26   probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme

27   emotional distress; and (3) actual and proximate causation of the emotional distress by the

28   defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citation and

1    internal quotation marks omitted).  A defendant's conduct is "outrageous" when it is so "extreme

2    as to exceed all bounds of that usually tolerated in a civilized community."  *Id.*

3          Here plaintiff also has not offered any facts showing that any defendants' conduct was so

4    extreme that it exceeded all bound of what is usually tolerated.  She also has not demonstrated

5    that defendants acted in any way that would cause her emotional distress.

6          For these reasons, plaintiff's emotional distress claims should be dismissed with leave to

7    amend.

8          **b.  Claim 9: California Government Code §§ 11135 and 11139**

9          Plaintiff's ninth claim asserts that the Elk Grove Police Department violated the California

10   Government Code sections 11135 and 11139, alleging that the "methods employed by the [Elk

11   Grove Police Department] discriminate against African-American motorists traveling through Elk

12   Grove."  (ECF No. 1 at 17-18.)  The City defendants argue that plaintiff has not alleged that they

13   denied her participation in any program or activity receiving state financial assistance.  (ECF No.

14   8 at 29.)

15         Under California Government Code section 11135, state agencies and state-funded

16   programs cannot subject anyone to discrimination on the basis of, among other things, race.

17   Section 11139 sets out the remedy for any violations of section 11135.  For the same reasons that

18   the Court concludes Plaintiff has not stated a claim for intentional discrimination on the basis of

19   race under Title VI or for violation for the equal protection clause, the Court also concludes that

20   Plaintiff has not adequately alleged that she was discriminated against because of her race.

21   Plaintiff fails to state a claim for violation of California Government Code sections 11135 and

22   11139 and the law enforcement defendant's motion to dismiss regarding claim nine should be

23   granted and plaintiff's claim should be dismissed with leave to amend.

24         **c.  Claim 12: California Civil Code § 52.1(b)**

25         The Tom Bane Civil Rights Act, California Civil Code § 52.1, "protects individuals from

26   conduct aimed at interfering with rights that are secured by federal or state law, where the

27   interference is carried out 'by threats, intimidation or coercion.'"  *Reese v. County of Sacramento*,

28   888 F.3d 1030, 1040–41 (9th Cir. 2018).  When a Bane Act claim is based on an alleged federal

1   constitutional violation, a plaintiff may rely on the same allegations to prove that the defendant

2   deprived them of a constitutional right and threatened, intimidated or coerced them. *See id.* at

3   1043 ("[T]he Bane Act does not require the 'threat, intimidation or coercion' element of the claim

4   to be transactionally independent from the constitutional violation alleged."). The Bane Act

5   requires "a specific intent to violate the [plaintiff's] right to be free from unreasonable seizure."

6   *Id.* (quoting *Cornell v. City & County of San Francisco*, 17 Cal.App.5th 766, 801 (2017)).

7         Here, plaintiff has stated a claim based on her federal constitutional rights, however, she

8   has not alleged any facts that show any defendant threatened, intimidated or coerced her during

9   the traffic stop on July 17, 2023. There are also no facts presented that defendant Durham has a

10   "specific intent" to violate plaintiff's rights. Therefore, the City defendants' motion as to

11   plaintiff's twelfth claim should be granted and plaintiff's claim should be dismissed with leave to

12   amend.

13   **V.    Plaintiff's Motions for Judgment on the Pleadings**

14         On September 23, 2024, plaintiff filed a motion for judgment on the pleadings. (ECF No.

15   23.) After improperly noticing this motion before Chief Judge Nunley, plaintiff filed another

16   motion on October 8, 2024.[8]  (ECF Nos. 30, 31.) In her motions, plaintiff alleges that "judgment

17   on the pleadings is appropriate for the Equal Protection Clause to the Fourteenth Amendment

18   cause of action and the Title 42 U.S.C. 1983, 2000d causes of action." (ECF No. 23-1 at 4.) She

19   also alleges that the "City of Elk Grove Police Department, controlled by Defendant(s) County of

20   Sacramento, has a pattern of failing to discipline officers for using racial profiling, amounting to a

21   de facto custom." (*Id.* at 6.) Plaintiff states that she is attempting "to show a civil conspiracy by

22   the Defendant(s) based on her race and ethnic origin" to deprive her of the right to travel. (ECF

23   No. 31 at 7.)

24   ////

_____

25   [8]  The Court notes that under Local Rule 230(b), "Motions defectively noticed shall be filed, but
26   not set for hearing; the Clerk shall immediately notify the moving party of the defective notice
     and of the next available dates and times for proper notice, and the moving party shall file and
27   serve a new notice of motion setting forth a proper time and date." Under this rule, plaintiff
     should not have filed a second motion for judgment on the pleadings. However, the Court has
28   reviewed and will consider both motions.

Defendants each opposed the motion.  Both defendants argued that plaintiff's motion is untimely because the pleadings are not closed as an answer has not been filed.  (ECF Nos. 28 at 2-3, 41 at 2.)  The City defendants also argued that plaintiff has failed to show that she is entitled to judgment as a matter of law.  (ECF No. 28 at 4.)

Because plaintiff's motion is untimely, the motions for judgment on the pleadings should be denied.

## VI.   Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's requests for judicial notice (ECF Nos. 32, 39, 42) are DENIED.

In addition, IT IS HEREBY RECOMMENDED as follows:

1.  The County of Sacramento's motion to dismiss (ECF No. 10) be granted without leave to amend;

2.  Defendants City of Elk Grove, Davis, Durham, and Smith's ("City defendants") motion to dismiss (ECF No. 8) be granted in part and denied in part as follows:

   a.  City defendants' motion be denied as to plaintiff's Fourth Amendment claim for an unreasonable search and seizure of her vehicle;

   b.  City defendants' motion be granted without leave to amend as to defendant Davis;

   c.  City defendants' motion be granted with leave to amend as to defendant Smith;

   d.  City defendants' motion be granted with leave to amend as to the City of Elk Grove;

   e.  City defendants' motion be granted with leave to amend as to the following claims:

      i.  The Title VI claim;

      ii.  The 42 U.S.C. §1986 claim;

      iii.  The 42 U.S.C. § 1981 claim;

1       iv. The state law claims; and

2     f. City defendants' motion be granted without leave to amend as to the

3      following claims:

4       i. The initial traffic stop component of plaintiff's Fourth

5        Amendment claim;

6       ii. The Commerce Clause claim;

7       iii. The Privileges and Immunities Clause claims; and

8       iv. The Omnibus Crime Control and Safe Street Acts of 1968

9        claim; and

10    3. Plaintiff's motions for judgment on the pleadings (ECF Nos. 23, 30, 31) be

11     denied.

12   These findings and recommendations are submitted to the United States District Judge

13 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

14 days after being served with these findings and recommendations, any party may file written

15 objections with the court and serve a copy on all parties.  Such a document should be captioned

16 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17 shall be served on all parties and filed with the court within seven (7) days after service of the

18 objections. Failure to file objections within the specified time may waive the right to appeal the

19 District court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951

20 F.2d 1153, 1156-57 (9th Cir. 1991).

21 Dated:  December 20, 2024

22             _____

23             CAROLYN K. DELANEY
              UNITED STATES MAGISTRATE JUDGE

24

25 5, roge.0475.24

26

27

28

33